Good morning. Good morning, Your Honor. May it please the Court, Gregory Murphy, Federal Defender of San Diego, for Mr. Cisneros-Flores. I will try to keep a two-minute rebuttal. Surely. Your Honor, in this case, no one is disputing that Mr. Cisneros-Flores was denied his right to counsel at his immigration hearing in 1997. So the issue before the Court here is whether there was anything an attorney could have done to help Mr. Cisneros remain in the United States with his wife and children or his fiancée and children in the way that he wanted. And the answer to that is yes. If he had been permitted to have an attorney as he desired, he would have married his spouse in proceedings, married his fiancée in proceedings. He would have submitted an application for adjustment of status. And there is every reason to believe that he would have remained in the United States law firm. Let me ask you this, that the would have, could have, should have. From the record that I have before me, it appears that still 14 years later, he has not married this woman. So to say that he would have married her, they had a child, he portrays himself as his family's very dependent on him. And if you really like dig into the record, the two children that he's talking about are his stepchildren, which that's not to say that they couldn't be. But then he, and if you look at the affidavit from his spouse on page 2 of her declaration, she said they had a child. They still didn't get married. And they gave that child up for adoption. So, you know, the whole approach that you're taking seems to be somewhat disingenuous. I mean, when you say that what we're required is we should tell people, well, you should go get married, when now he's claiming that was ineffective, and 14 years later, he still hasn't gotten married. Your Honor, I think I understand the Court's points. And I guess I have a couple of responses. First, with respect to the sort of the realness of their marriage, I think there's plenty of evidence in the record to support the fact that it was a bona fide marriage. They did ultimately have a child. It was a bona fide marriage. I thought they weren't married. I'm sorry. That it was a bona fide relationship. It was a bona fide marriage. Excuse me, Your Honor. That, in fact, as the Court notes from the declarations, he was acting as the child's parents with Child Protective Services. He was living with the family. He was supporting the family. And with respect to the larger question of why they are not married now or what the Court can take from the fact that now, 13, 14 years later, they're not married, it is, I think, important to consider the sort of timing of this event in 1997. I know, Judge Callahan, that you, in 2007, wrote a case called Gonzales v. DHS, I think, in which you noted that in April of 1997, IRA created whatever it was, I guess, 1182A1A9C. It created a permanent barred intermissibility for people who had been deported from the United States and subsequently tried to reenter. So at the time of this removal proceeding in January, this was really his only chance of ever reentering the United States legally through his marriage to Ms. Gomez. He had a three-month window in which he could have done that before this bar came into existence, and he had no attorney to tell him that this was true. The enactment date of IRA was known. It was probably known to the district court judge who told him that he could go to Mexico and seek a visa, which he decided he would endeavor to do. But it was not possible for him to follow that advice because the law precluded it by the time that he was deported. So you're saying an attorney could have wisely told him to get married even though he didn't want to be married. He said, well, hey, if you get married, it's a great move you can make on immigration. You can stay here. But he didn't care about getting married otherwise. Your Honor, the judgment is he did desire to get married. In fact, the declaration, he did desire to get married. I think for 14 years he's been, he's had the desire for 14 years. And he's been, I think the other argument you want to make to us is that, well, they translated the girlfriend, novia, into girlfriend and said it was the fiance. So it's a 14-year engagement, too, I think. Is that the argument? Your Honor, what I want to tell the Court is that in 1997, when he was looking for an attorney to help him remain in the United States, his desire, as he expressed to the Immigration Court, was to marry the mother of the children he considered to be his own, the woman he considered to be his fiancée. The record is clear on that point. It hasn't been disputed. With respect to why he was married. But then are we going to ask, are we going to have to make her marry him? I mean, he has a, he's got a record. He's a drug addict. And he's been deported seven times. So then is the next step going to be that, well, if we could force her to marry him, then he would be eligible? No, Your Honor. And I think, I think I have two thoughts. The first is that Ms. Gomez is totally clear in her declaration that she desired to marry him then and desires to marry him now. In fact, I mean, it's not on the record, but she's still on the phone with me, not infrequently. The second thing that I would say is that there's What's keeping her from marrying him? Well, the fact that he can't live in the country. The fact that she has children and she had a life in Oakland, and he can't live in the United States. And when he tries to come into the United States, he's prosecuted for illegal reentry, which, you know, obviously is an obstacle. But I think another problem that comes up in this analysis and maybe finds its way into the government's brief, and certainly may be somewhat my fault, is that I'm not, we've argued in part that the immigration judge sort of was on notice and should have advised him of these things. But we don't really need to go there, because the certainly an immigration attorney had a duty to Mr. Cisneros that the immigration judge did not. Certainly, an immigration attorney would have told him, say, if you want to remain in the United States, if you and your spouse genuinely want to marry, if you want to remain together as a family, there is a way to do that. And in a way, I think that that's a point that the Court made, that Your Honor made again in the Gonzalez-Velasquez case, where you said, you know, writing for the en banc court, you said there are times, conceivably, where prejudice can be shown through strategic decision-making. But that's not here. Well, I'm wondering with him, since he has seven other unchallenged deportations, could he really show prejudice? I think he could, Your Honor, and for a number of reasons. First, I guess it's important to note that this issue was never sort of just, was never really litigated in the district court. So some of the arguments that I'll make, I don't think, were ever submitted to the district court or to Your Honor. But it does seem clear that at the time of his deportation, there was no unwaivable ground of admissibility that would have prevented him from entering, I'm sorry, through adjusting his status through his spouse. There would have been as of April, but there wasn't at the time of his removal or deportation. And the reason that, and that, I think, is kind of, if we look through the litany of cases involving the right to counsel from 1980 onwards, that's kind of the quintessential prejudice from the denial of right to counsel idea. That is, that the right to counsel, that an attorney is able to sort of marshal facts, identify the law, figure out what can be done to help somebody, and then present that in a way that's persuasive to the court, to the immigration court, hopefully. Certainly, you know, it's not, it's not guaranteed, Your Honor. I will be candid. It's possible an immigration judge would have concluded that he could not have entered, you know, that he was not worthy of exercise of discretion. But it's certainly plausible that he would have. There's tremendous equities in the record. And this Court repeatedly has suggested that we don't, that the equities in this type of case are not, are sort of not, that in a denial of right to counsel case, because we don't know exactly what an attorney, what a good attorney would have done for him. You're at two minutes. What I'm going to ask you on rebuttal is, I'm going to ask you to talk about if we should wait for U.S. v. Borben. I'm sorry, Your Honor? If we should ask, I'm going to ask the other side about it. We've got a, there's a Ninth Circuit case that's pending on counsel U.S. v. Borben. Yes, Your Honor. This is the consolidated cases that we mentioned. Right. Thank you. I'll address those. Thank you. Thank you. Good morning. May it please the Court. Mark Rahe for the United States. In direct response to the question you just asked, Judge Callahan, I believe you should wait, because one of the, there's sort of, the way I see it, two arguments on prejudice with the right to counsel violation in this case. One, if it's prejudicial per se, and obviously that's not the government's position, but if so, that's the end of the discussion and there's no reason to go any further.        Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  I know that we don't have to go any further. But I know that those three cases are before that panel. It's been five months. Maybe a decision will be coming soon. So I should tell them to hurry up, and then wait. That's all right. It's a tricky issue, but you know, I figure the reason we're here today is to assume that, assuming that that issue is resolved against the defense. There really is a middle position, isn't there? Well... Besides prejudicial per se. We've got plenty of cases that would suggest the rule isn't prejudicial per se. We don't need three new ones. Does that make sense? Sure. Yeah. If you don't, then you can't tell us that. Fair enough. But there are intermediate positions, aren't there? It could be kind of a burden shifting prejudice, a presumption that can be overturned. That kind of thing. Truth? Well, the one that I'm most familiar with being in the criminal side in San Diego is the plausible grounds of relief. It goes back to Ubaldo-Figueroa. It's reiterated in virtually every 1326-D case that this Court reaches. And that is... Because we do have other Ninth Circuit precedent that doesn't say that, right? We do. And most recently... Yeah. So unless it... Unless those cases... Unless it went en banc, they wouldn't be able to say that. Okay. But either way... Okay? I don't... I suppose... Don't we have to... I mean, the last time I checked, we have to follow our precedent. Unless we go en banc, then we can revisit our precedent and come up with something... Absolutely. And that's what we've assumed from day one. This is the side that wants to tell you, oh, it's prejudicial per se, don't look any further. We've been saying, let's apply the law... Well, but you just said that that Court could hold... That that panel could hold it was prejudicial per se. And I think what Judge Fernandez was saying is we have other precedent that says it's not. So there would be another step that would have to be involved. You are correct, Your Honor. I misspoke. It would have to be an en banc ruling. But applying the standard, the standard of prejudice that's been in the circuit for at least 15 years now, the defense has to show plausible grounds to relief. One of the most important cases that defense didn't mention in its presentation, of course, is United States v. Morial Luna, decided a couple years ago, where this Court squarely held that in the absence of any indication in the record that an alien in immigration proceedings is either married or they drop in a footnote, at least has a pending engagement, there is no due process obligation of an immigration judge to advise that alien of the possibility of relief through adjustment of status. Well, in this case, if we decided that the 1997 deportation was invalid because he was denied counsel, does that require reversal or can any of the other seven deportations suffice? Well, in all honesty, Your Honor, I'm not... I think since this was the only one, we would take that position on remand. But since this January 1997 removal is the one that was litigated below, that's the one that we focused on in our papers. Okay. And in this case, under Morial Luna, again, if there's no indication married, let alone at least an engagement, there is no obligation of an IJ to advise somebody of adjustment of status. And that's because one of the three statutory prerequisites for eligibility is an immediately available visa. And as Your Honor pointed out in Lopez Velasquez, it's an IJ's duty simply to advise an alien of relief for which he is eligible or apparently eligible at the time of the removal hearing. In this case, certainly not married, the alien not once but twice when asked by the IJ said, I'm single, I'm not married. Didn't mention word one about being engaged. I know in his opposition brief below, defense now hints that, oh, this word that was used in the record could also mean fiance. I think it's past the point of arguing that. The certified transcript of the removal hearing that he attached to his papers below simply said girlfriend. There was never any inkling of engagement. So in that, under Morial Luna, then, I don't see any way around it that that's certainly not a due process violation by what the IJ did. And I don't think it's good public policy for the law of the circuits to put IJs in the matchmaking business. Obviously, under 1255, I believe it's subsection E or one of those subsections, there is basically a presumption against the validity of a marriage that's entered into while removal proceedings are pendent. So there's clearly a congressional policy to frown upon that. Doesn't mean it's impossible, and I know there was discussion earlier about the bona fide exception, but it's clearly the policy that that shouldn't be the go-to reaction, and yet that's basically what the defense is asking. So there's no violation there. Now, as for the right to counsel, this can't be pure speculation. If Morial Luna squarely held that an immigration judge has no obligation to grant a continuance to allow somebody to get married, I don't see how this side can prove prejudice simply by having an attorney advise the alien of the same thing. Well, maybe the attorney would say something like, hey, I just got hired. I need a continuance to review the case and dig into it and really understand it and develop my facts. Probably an IJ would have given a continuance on that basis, and then the attorney would turn to his client and say, go get married real quick. How about that? Well, that sounds like that would be in violation of law. Which law? Based on what I told you, there is a presumption against a marriage simply for the purpose of avoiding removal proceedings. But there's only a presumption. Right. And how do they test the presumption? They go out and they say, are they living together? Do they both know where the bathroom is? Are they raising the kids together, et cetera, et cetera? There's a whole list of things. I don't know that they say, did this guy get married because he thought, whoops, I better get married. Well, I think they would ask that. And actually it goes to a point, the panel made it when my opponent was up, they often look, as you're pointing out, Judge Fernandez, to after events based on what the conduct that comes after. Well, they still plan to stay together. They just don't ever plan to get married. Well, precisely. That seems to be the issue. But it doesn't seem that it's a contrived relationship, that the record seems to support that they have continuity over a period of time, just not continuity of marriage. And they're not together much, but that might not be entirely their fault. Well, that was our point. You know, I know our defense thought we're criticizing these people, and I believe footnote 14 of our brief, we're not. We're simply saying, I don't know if it was footnote 14, we're saying after 14 years they're still not married. Can the relationship that Judge Callahan described be a relationship that actually constitutes a pending engagement? Is it legally possible? In this country, I'm not a marital expert. I would think there has to be at least a proposal. But even without knowing that, Your Honor, we have to bring it back to what is the focus of this appeal. We need to put ourselves in the shoes of a reasonable immigration judge and say, that immigration judge, when is the information presented to him? Right, because I believe it's 242.17 of 8 CFR that says, only obliged to advise of relief that appears reasonably apparent from the record. There's case law that goes back 20 years that says we don't expect IJs to be clairvoyant. So I certainly don't know that we can expect them to be relationship experts to try to ask these various questions. Could Judge Fernandez's indication that you could probably get a continuance, would that be sufficient to make a determination that it's not speculative? No, I don't believe so, because I'd say, let's say that happens. What's the test? Plausible grounds of relief. Or what's the metric that the defense keeps invoking? Something that could affect the outcome of the proceedings. What's a continuance? It's simply a delay of time. That in and of itself speaks nothing to the merits of the case or even as to whether relief is plausible. It can't just be possible. This Court has made that clear as well. I mean, this 1326D, it's always a little bit of a game. We know at the ends of the spectrum. They don't have to prove that they actually would have got relief, but they also have to prove more than that it's merely possible. It has to be plausible. And what the government would say is based on Morial Luna, there's a clear decision there that IJ certainly had no obligation to an alien who says twice that he's not married to advise him to go get married and get adjustment status. And what we're saying is that even notwithstanding that, he still spoke about the issue. I know my opponent said something about IRERA and there's a permanent bar. That wasn't briefed. I'm not so familiar with that. This alien had no aggravated felony. So I'm not going to concede that he had some three-month window, especially when that's not been briefed. The point is here, this IJ even told him point blank, if you get married, you can come, you can change your situation. He didn't need to be in the United States to get married. He could have gotten married in Mexico. And where are we 14 years later? Still not one step in that direction. And to now go back and to claim that this somehow renders this immigration removal invalid for use as an element in this case, I don't believe that's a valid argument. Unless the Court has any further questions, government would submit. There are not a pair of additional questions. Thank you for your argument. Your Honor, just three quick points. Of course, returning to the Court's question about forebone, you know, if that case comes out the way we hope, you know, obviously it would be determinative here. But I think that if the Court compares this case to the universe of other cases in which the Court has found a violation, prejudice from the violation of the right to counsel, the Court doesn't need to reach a question of whether there is a presumption or whether there is a it's per se. I'll note, for example, that the government's main case, this Serta-Pena case from back in the 80s, essentially says that there's a burden shifting once the defense presents, quote, some concrete evidence. And certainly the record contains that. With respect to the government's argument about the immigration judge's obligation to advise, you know, we have a different opinion, but certainly the immigration judge's duty to advise is not, you know, coextensive with an immigration attorney's duty to advise. And that case, that fact certainly makes our case stronger, I think. With respect to Judge Fernandez's comment about the continuance, there is, as we note in our papers, not only a possibility of continuance, but policy in favor of continuances in these circumstances as well as policies in favor, regulations in favor of motions to reopen if somebody marries while an appeal is pending and so that the immigration judge can consider that. And lastly, with respect to your Court's question regarding the seven prior deports, whether those could withhold it, they couldn't. There's no reason he couldn't have been charged with an illegal reentry based on one of those. But because this one was the one that was litigated and because this one actually pulls in his only felony, which happened years later, he could not, he would have been subject to a different statutory maximum, a different period of supervised release. This conviction as it exists now could not have been based on any of the prior deportations. All right. Thank you for your argument. Thank you. This matter will stand submitted. United States of America v. Baraka, Miss Toomey, Rafiki, that's case number 10-50295. Thank you.
judges: Erickson, Fernandez, Callahan